UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ALGIERS DEVELOPMENT DISTRICT  *
                                  *    CIVIL ACTION NO. 16-16402

**Versus**                                  *

                                       *    JUDGE:     LEMMON ("S")

**VISTA LOUISIANA, LLC,**          *

**VISTA TRUST AND DEVERE**      *    MAGISTRATE:   WILKINSON (2)

**CONSTRUCTION COMPANY, INC.**  *

                                      *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

OPPOSITION TO MOTION TO DISMISS
COUNTERCLAIM AND THIRD PARTY DEMAND

**MAY IT PLEASE THE COURT:**

      Vista Louisiana, LLC, Vista Trust and DeVere Construction Company, Inc. (collectively "Vista") respectfully submit this Memorandum in Opposition to the Motion to Dismiss Counterclaim and Third Party Demand filed by Plaintiff and Defendant-in-Counterclaim, Algiers Development District (hereafter, "ADD"), and Third Party Defendants, Senator Troy Carter, Senator Jean-Paul "JP" Morrell, James Henderson, Jr., Paul Collins, Joe Toomy, Mark Major, Representative Gary Carter, Jr., and Kathy Lynn Honaker (collectively, "Third Party Defendants").  For the reasons more fully set forth herein, ADD and Third Party Defendants' Motion to Dismiss Counterclaim and Third Party Demand should be summarily denied.

    **I.**     **Introduction**

      This case arises out agreements wherein ADD engaged Vista to develop the 120 acres of land on the West Bank of the City of New Orleans, Louisiana, comprising the former Naval Support Activity Property and formerly known as "Federal City," and which is to be developed

S:\Vista Louisiana LLC - 1333\1333-001 Algiers Development District\Pleadings\USDC\170307   Opposition to Motion to Dismiss Version.docx

Page 1

as a mixed use project to be called "New Orleans Riverside at Historic Algiers" (the "Project"). (R. Doc. 4, ¶5 of the Counterclaim).  Vista took over the development after a prior development deal with HRI terminated in 2014.

Vista and ADD first inked a development agreement in 2015 with Jeff Arnold, a Louisiana state senator and Chairman of the ADD (the "Development Agreement").   Vista worked diligently thereafter to develop the Project.   Only after Jeff Arnold was replaced as Chairman of the ADD with Troy Carter, did ADD and the Third Party Defendants seek to terminate Vista's development agreements on the Project.  In response, Vista sought relief from this Court via a §1983 action[1].   Vista's cause of action under §1983 remains viable because ADD and Third Party Defendants purloined Vista's vested property right in the Project.  The § 1983 analysis turns on Vista's designation as the "**sole and exclusive**" development agent for a 10 year period; the fully executed Purchase Agreement between Vista and ADD(the "Purchase Agreement";  and, the **approval** of Vista's Development Business Plan (as defined herein) to **develop the Property**, before ADD and Third Party Defendants unilaterally canceled the development deal.   These facts cannot be disputed.   (R. Doc. 4, ¶24, 60, and 62 of the Counterclaim).  Vista clearly plead both in its Counterclaim and Third Party Demand; and, such allegations must be accepted as true in a motion to dismiss inquiry.   This is not simply a breach of contract action, but instead  ADD and Third Party Defendants, arms of the state, deprived Vista of its vested property right in the Federal City property;  thus, Vista's claims for violations of §1983 are appropriate and warranted.

---

[1] Vista filed its "Answer, Defenses, Counterclaim and Third Party Demand"  asserting a counterclaim against ADD for Count I (Demand for Specific Performance), Count II (In the Alternative, Breach of Contract), Count III (Attorney's Fees) and Count IV (Deprivation of Substantive Due Process Rights Under the United States and Louisiana Constitution).   Vista also filed a third party demand against the Third Party Defendants for Count I (Declaratory Relief Based Upon Violation of Substantive Due Process Rights Under the United States and Louisiana Constitution), and Count II (Individual Liability). (R. Doc. 4).

S:\Vista Louisiana LLC - 1333\1333-001 Algiers Development District\Pleadings\USDC\170307   Opposition to Motion to Dismiss Version.docx

Page 2

As the Court is aware, "A motion to dismiss for failure to state a claim is 'viewed with disfavor and is rarely granted.'" *R&B Falcon Drilling USA, Inc. v. Pittman*, No. CIV.A. 02-1942, 2002 WL 31886792, at *1 (E.D. La. Dec. 18, 2002) (*Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1985)).   Yet, ADD and Third Party Defendants continue to engage in procedural machinations, i.e., its failed Motion to Remand (R. Doc. 6) and now this Motion to Dismiss (R. Doc. 21), instead of litigating this dispute on the merits.   ADD and Third Party Defendants are well aware that this case is not a simple breach of contract case, and that Vista had a vested property right in purchasing and developing the Federal City property, as per the exclusive Development Agreement and the Purchase Agreement.   ADD and the Third Party Defendants sat on their rights to reject and/or question Vista's Business Development Plan, but failed to respond in any way until after Vista's Business Development Plan was deemed approved.   Still, ADD and the Third Party Defendants filed suit to cancel the development agreements, and to move forward with a new "Troy Carter" approved developer.   No amount of word smithing changes the simple fact that ADD and Third Party Defendants, arms of the state, deprived Vista of its vested property right in the Federal City property;  thus, Vista's claims for violations of §1983 must stand.

## II.    Procedural History

On October 14, 2016, ADD filed suit in Civil District Court for the Parish of Orleans, State of Louisiana against Vista, seeking a declaration that Vista breached certain contracts between Vista and ADD, and said contracts should be terminated. (R. Doc. 1-1).  On November 16, 2016, within thirty (30) days of the date on which Vista Louisiana, LLC was served, the defendants jointly removed the action to federal court on the basis of diversity jurisdiction and federal question jurisdiction. (R. Doc. 1). ADD sought to have the case remanded, claiming that

neither diversity jurisdiction nor federal question jurisdiction exists. (R. Doc. 6).  This Court rejected ADD's remand efforts in its January 12, 2017 Order and Reasons.  (R. Doc. 20).

After removing this case, on November 15, 2016, the Vista defendants jointly filed an Answer, Defenses, Counterclaim, and Third Party Demand. (R. Doc. 4). As per its counterclaim and third party demand, Vista alleges breach of contract claims, and that ADD and its members are liable under 42 U.S.C. § 1983 for arbitrarily and capriciously depriving Vista of its fully vested property interest created as part of the Development Agreement, Supplemental Development Agreement and the Purchase Agreement executed by and between ADD and Vista, in violation of Vista's substantive due process rights. (R. Doc. 4, p. 32, ¶ 75-82 (breach of contract claims); p. 35, ¶ 86-89 (§ 1983 claim against ADD); p. 36, ¶¶ 1-35 (§ 1983 claim against members of ADD)).

Before this Court now is ADD and Third Party Defendants' Motion to Dismiss certain § 1983 claims, which motion should be summarily denied.  (R. Doc. 21).

### III.   Factual Background

ADD endeavored to develop Federal City for seven (7) years, but little development has occurred. The United States of America, acting by and through the Department of Navy (the, "DON"), first leased Federal City to ADD via a "Real Estate Lease for Naval Support Activity New Orleans, West Bank, New Orleans, Louisiana" on September 30, 2008.  Then on May 21, 2013, DON sold Federal City to the ADD via an "Act of Sale".  After the acquisition, ADD sought a developer for Federal City.  Upon information and belief, ADD contracted with HRI to develop Federal City, but HRI dropped out of the picture.

This is when Vista picked up the ball, and began development of Federal City.  Vista and ADD entered into the Development Agreement as of March 2, 2015, wherein ADD engaged

Vista to develop Federal City.  (R. Doc. 4, ¶5 of Counterclaim).  ADD designated Vista as the "sole and exclusive development agent" the Project for a ten year period.  (R. Doc. 4, ¶60, 62 of the Counterclaim). Vista relied on this appointment as its reason for entering into the Development Agreements, and expending the years and $2.5 million dollars developing the Project.  (R. Doc. 4, ¶61 and 82 of the Counterclaim).

After the execution of the Master Development Agreement and in accordance with the specific terms thereof, Vista worked with Architects Southwest to draft a Master Plan.  The Master Plan was dated as of October 26, 2015, and approved by ADD on October 27, 2015, with certain additional stipulations by resolution adopted December 22, 2015 (the "Master Plan"). (R. Doc. 4, ¶11 of Counterclaim).  Now that a Master Plan was in place, Vista moved forward on to purchase the real property to begin construction. Accordingly, Vista and ADD entered into the First Supplemental Development Agreement as of January 1, 2016. (R. Doc. 4, ¶12 of Counterclaim).

Contemporaneously with the execution of the First Supplemental Development Agreement, Vista and ADD executed a Purchase Agreement, wherein Vista had the right to purchase 65 acres of the Property at a specified price. (R. Doc. 4, ¶13 of Counterclaim).  In concert with the recommendations of Architects Southwest, the author of the Master Plan, Vista elected to purchase and develop a 22 acre portion of the Property, designated in the Purchase Agreement as Phase IA Historic. (R. Doc. 4, ¶14 of Counterclaim).

In order to fulfill the conditions precedent in the Purchase Agreement, Vista transmitted its Development Business Plan to ADD. (R. Doc. 4, ¶15 of Counterclaim).  In its Development Business Plan, Vista outlined its immediate desire to close on and begin developing the Phase 1A Historic portion of the Property into multi-family housing, a restaurant and retail complex, a

hotel and banquet complex, a second restaurant, and multi-family living / work spaces.  (R. Doc. 4, ¶16 of Counterclaim).  The submission of the Development Business Plan by Vista to ADD on June 30, 2016, specifically stated that the submission was made "in satisfaction of Vista's obligations and conditions to closing under the Purchase Agreement."  (R. Doc. 4, ¶21 of Counterclaim).  ADD did not provide any response whatsoever to Vista's Development Business Plan until September 1, 2016.  (R. Doc. 4, ¶22 of Counterclaim).  At the time of ADD's September 1, 2016 response, Vista's Development Business Plan had already been deemed approved by ADD, under Section 9.8 of the Purchase Agreement.  (R. Doc. 4, ¶24 of Counterclaim).

Vista relied on its designation as the "sole and exclusive development agent" on the Project for a ten year period.  (R. Doc. 4, ¶60, 62 of the Counterclaim). Vista relied on this appointment as its reason for entering into the Development Agreements, and expending the years and countless dollars developing the Project.  (R. Doc. 4, ¶61 of the Counterclaim).  In breach of the designation of Vista as the "sole and exclusive development agent", ADD is soliciting and/or searching for a new master developer to replace Vista, and had been so soliciting for months prior to ADD's illegal termination of the Development Agreement, including the Purchase Agreement, with Vista.  Said actions violate Vista's vested property rights in its role as the "sole and exclusive development agent".  (R. Doc. 4, ¶64 of the Counterclaim).

IV.   **Legal Argument**

A.   **Standard for Motion to Dismiss**

What is lost in ADD and the Third Party Defendant's motion to dismiss is the legal principal that motions to dismiss are "disfavored" and are "rarely granted". *Clark v. Amoco*

*Production Co*., 794 F.2d 967, 970 (5th Cir.1986).  On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true. *McCoy v. Housing Auth. of New Orleans*, No. 15-389, 2015 WL 9204434, at \*5 (E.D. La. Dec. 17, 2015) (citing *Leatherman v. Tarrant Ctny. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)).  Meaning, that all of Vista's claims are liberally construed in its favor, and all facts plead by Vista are taken as true.  Considering this requirement, the motion to dismiss surely must fail.

Courts have stated that Vista's complaint need not contain detailed factual allegations, but must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). From the face of Vista's Counterclaim and Third Party Demand, there is enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

Vista's claim must be plausible, in order to survive the motion to dismiss.  A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

S:\Vista Louisiana LLC - 1333\1333-001 Algiers Development District\Pleadings\USDC\170307   Opposition to Motion to Dismiss Version.docx

Page 7

Vista's Counterclaim consists of 89 numbered allegations, with specific details. Vista's Third Party Demand, incorporates the 89 numbered allegations in the Counterclaim, and adds 35 more. Vista articulates countless facts, demonstrating that it has evidence of ADD's actions, and is on the "right side" of this dispute. Clearly, Vista's Counterclaim and Third Party Demand allege facts sufficient to nudge its claim across the line from conceivable to plausible. ADD and Third Party Defendants' position on the facts, as articulated in its Complaint, and as sprinkled throughout its Motion to Dismiss, cannot be considered at this juncture. Accordingly, Vista's Counterclaim and Third Party Demand must not be dismissed.

**B.  ADD and Third Party Defendants' Motion to Dismiss Must Be Denied**

**1.  This Dispute is not Merely a Breach of Contract Claim, to which §1983 is Inapplicable.**

ADD argues that Vista fails to state a claim under § 1983 because this dispute is simply a breach of contract claim. That is wholly incorrect. Vista worked with ADD for years on the development of Federal City and spent millions of dollars on its efforts; and, when its Development Business Plan was approved and **Vista was ready to purchase the Phase IA Historic Property**, in accordance with the executed Purchase Agreement, ADD unilaterally terminated Vista's development contracts. As detailed in the Counterclaim, after the Master Plan was approved on December 22, 2015, Vista elected to purchase and develop a 22 acre portion of the Property. ADD and Vista then executed a Purchase Agreement, detailing the purchase price, property, and conditions precedent to purchase. (R. Doc. 4, ¶14 of Counterclaim). In order to fulfill the conditions precedent requirement of the Purchase Agreement, Vista transmitted its Development Business Plan to ADD on June 30, 2016. (R. Doc. 4, ¶15 and ¶19 of Counterclaim). In its Development Business Plan, Vista outlined its **immediate desire to close on** and begin developing the Phase 1A Historic portion of the Property. (R. Doc. 4, ¶16 of

S:\Vista Louisiana LLC - 1333\1333-001 Algiers Development District\Pleadings\USDC\170307   Opposition to Motion to Dismiss Version.docx

Page 8

Counterclaim).  Only after Vista's Development Business Plan was deemed approved, and the conditions precedent to moving forward with the purchase were satisfied, did ADD and the Third Party Defendants pull the rug from underneath Vista.

Courts have held that substantive due process does not protect "run-of-the-mill" contractually-based property interests. On the other hand, there undoubtedly are circumstances in which a breach of contract by a state actor would raise substantive due process concerns. While simple state-law contractual rights, without more, do not do so, the question in each case is whether the breach affects interests sufficiently grave to trigger due process scrutiny.

Vista is aware that § 1983 does not make a federal case out of every breach of contract by a state agency. See, *Braden v. Texas A & M University System*, 636 F.2d 90, 93 (1981), citing *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Shillingford v. Holmes*, 634 F.2d 263 (5th Cir. 1980);  however, this is no simply breach of contract case.  Instead, ADD violated Vista's constitutionally protected rights to purchase the property, and as the "sole and exclusive" developer for the Project, i.e., this is also a taking of Vista's property rights which are the subject of the fully executed Purchase Agreement.

ADD ignores the clearly established principal that many cases, which appear to be simply breach of contract cases, are instead §1983 cases.  For example, in *Braden*, the 5th Circuit examined a complaint alleging an injury to plaintiff's reputation, which he contended should be constitutionally protected under the rubric of substantive due process, as well as a deprivation of his "property" interest in his employment in violation of procedural due process guarantees. *Braden v. Texas A & M University System*, 636 F.2d 90, 93 (1981).  The university contended that the dispute was merely a breach of contract, and that §1983 was not applicable.  The 5th Circuit disagreed with the University, noting that "These are not mere breach of contract claims.

They are claims for deprivation of property without due process even though the property interest is alleged to be founded on a contract." " *Braden*, 636 F.2d at 93.

Similarly, Vista's deprivation of property is based on the Purchase Agreement and the exclusive Development Agreement, but is not merely a breach of contract.  Instead, ADD and Third Party Defendants deprived Vista of its rights as the "sole and exclusive" developer for Federal City, and seeks to terminate Vista's development contracts even though the conditions precedent to purchase the Phase IA Historic Property have been satisfied. Vista is ready, willing and able to purchase the Phase IA Historic Property, and has every right to do so;  yet, ADD refuses to sell it to Vista. These are not merely breach of contract issues.  Considering the jurisprudence that Vista's claims are to be liberally construed in its favor, and all facts pleaded are taken as true, ADD's motion to dismiss must be denied.  See, *McCoy v. Housing Auth. of New Orleans*, No. 15-389, 2015 WL 9204434, at *5 (E.D. La. Dec. 17, 2015) (citing *Leatherman v. Tarrant Ctny. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)).

## 2. **The Dispute Involves a Deprivation of Vista's Constitutionally Protected Right; and thus, §1983 is Applicable.**

ADD seeks dismissal of Vista's Count IV (Deprivation of Substantive Due Process Rights Under the United States and Louisiana Constitution).  In arguing for dismissal, ADD ignores the clear fact that Vista had a constitutionally protected property interest in the Property; and, by unilaterally and unjustly refusing to sell Vista the Property and cancelling the Development Agreement, including the Purchase Agreement, ADD deprived Vista of substantive due process.

In order to establish a substantive due process violation, a plaintiff must first show the existence of a constitutionally protected right to which the Fourteenth Amendment's due process protection applies. *Simi Inv. Co., Inc. v. Harris Cnty, Tex.*, 236 F.3d 240-249-50 (5th Cir. 2000).

"If there is no denial of life, liberty, or property, then the government is not required to provide due process." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 594 (E. D La. 2016). The Supreme Court has explained that property interests, for the purposes of the due process clause, are created and defined by existing rules or understandings that stem from an independent source such as state law. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The Court further stated that a protected property interest requires more than a person's abstract need, desire, or unilateral expectation of it; one must instead have a legitimate claim of entitlement to the property interest. *Id*.

Thus, the court must first turn to Louisiana law to determine whether Vista has a property interest protected by the due process clause.  Vista's property interest in developing the Project and its designation as the "sole and exclusive" of the Project is created and its dimensions are defined, by Article I § 4 of the Louisiana Constitution of 1974 which provides:

> Every person has the right to acquire, own, control, use, enjoy, protect and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.

La. Const. art. I § 4 (1974) (emphasis added). The Louisiana Constitution protects individual's property rights, such as those held by Vista.

The Fourth Circuit addressed the question of what is a vested property right in *New Orleans Public Service Inc. v. Citizens Utilities Co*.  The issue was whether Entergy's agreement with the City was a "vested property interest," which prohibited SWB, and other city agencies, from contracting with competing companies. *New Orleans Public Service Inc. v. Citizens Utilities Co*., 98-0805 (La.App. 4 Cir. 1/6/99), 726 So.2d 1012, 1014-15. The Fourth Circuit agreed with Energy that it held a vested property interest because in the City Council's role to regulate Entergy's rates and services, it is authorized to grant indeterminate permits (i.e.,

franchises) to public utility companies. These permits "continue in force until such time as the city purchases the utility ... or until the permit is otherwise terminated according to law." Pursuant to the indeterminate permit issued by the City Council in September 2, 1922, Entergy has the right and authority:

> "…to acquire, manufacture, distribute, deliver and vend artificial and or natural gas in the City of New Orleans and to construct lay and maintain pipes, mains, conduits, man-holes, reducers and all other appurtenances and accessories in, across and through the streets, alleys, highways, squares, parks bridges and other public places in the City of New Orleans…."

Therefore, Entergy's agreement with the City is a "vested property interest," which prohibits SWB, and other city agencies, from contracting with competing companies. *New Orleans Public Service Inc. v. Citizens Utilities Co*., 98-0805 (La.App. 4 Cir. 1/6/99), 726 So.2d 1012, 1014-15.

The instant case is virtually identical to *Citizens Utilities.*   Both cases involve contracts with a governmental agency, and the designation as an exclusive provider of certain services.  In both cases, the governmental agency sought to violate the terms of the contracts, and to ignore the "exclusivity" designation.  The Fourth Circuit, interpreting Louisiana law, found Entergy has a vested property interest in its contracts with the governmental agency.  Applying this guidance, Vista has established that ADD and Third Party Defendant's actions deprived Vista of its protected property interests.

Vista clearly set forth the factual allegations demonstrating that it held a constitutionally protected property right in the Federal City property.  Vista clearly established (and ADD does not dispute) that Vista and ADD entered into a Master Development Agreement as of March 2, 2015, wherein ADD engaged Vista to develop Federal City.  (R. Doc. 4, ¶5 of Counterclaim). Vista further described the master plan process whereby Vista worked with Architects Southwest to write a Master Plan, which was approved by ADD on October 27, 2015, with certain

additional stipulations by resolution adopted December 22, 2015. (R. Doc. 4, ¶11 of Counterclaim). Within days of the Master Plan being approved by the ADD, Vista and ADD entered the second phase of the development agreements by entering into the First Supplemental Development Agreement and Purchase Agreement. (R. Doc. 4, ¶12, 13 of Counterclaim). Vista submitted its Development Business Plan in order to fulfill the conditions precedent in the executed **Purchase Agreement**. (R. Doc. 4, ¶15 of Counterclaim). In its Development Business Plan, Vista outlined its immediate desire to purchase and begin developing the Phase 1A Historic portion of the Property. (R. Doc. 4, ¶16 of Counterclaim).

As detailed *infra,* the submission of the Development Business Plan by Vista to ADD on June 30, 2016, specifically stated that the submission was made "in satisfaction of Vista's obligations and conditions to closing under the Purchase Agreement." (R. Doc. 4, ¶21 of Counterclaim). ADD did not provide any response whatsoever to Vista's Development Business Plan until September 1, 2016. (R. Doc. 4, ¶22 of Counterclaim). At the time of ADD's September 1, 2016 response, Vista's Development Business Plan had already been deemed approved on August 1, 2016, under Section 9.8 of the Purchase Agreement, and the conditions precedent to purchase were satisfied. (R. Doc. 4, ¶24 of Counterclaim).

Instructive to this Court is the District Court's opinion in *Hearns Concrete Constriction Co. v. City of Ypsilanti* wherein the Court considered a developer's constitutionally protected property interest in a development. In *Hearns,* the developer/property owner brought an action against the City, City Planning Commission and City Officials, alleging several claims arising from defendants' issuance of a stop work order on ground that developer/plaintiff had failed to diligently pursue construction work, in violation of a conditional building permit. On a motion to dismiss the §1983 claim by the defendants, the Court found that the developer/plaintiff had a

S:\Vista Louisiana LLC - 1333\1333-001 Algiers Development District\Pleadings\USDC\170307   Opposition to Motion to Dismiss Version.docx

Page 13

constitutionally protected property interest in the development because his proposed development complied with the existing zoning regulations, **and it had already been approved by the City**.   Accordingly, the plaintiff had a constitutionally protected property interest, satisfying the elements of its substantive due process claim.   *Hearns Concrete Const. Co. v. City of Ypsilanti,* 241 F.Supp.2d 803, 813 (E.D. Mich. 2003).

Similarly, Vista held a vested property interest in its role as developer, and in its right to purchase the Phase IA Historic Property, after ADD's approval of the Development Business Plan.   ADD's actions are more than a breach of a contract.   Vista's rights to the Federal City property vested when its Development Business Plan was approved.   The parties executed a Purchase Agreement;   Vista offered to purchase the Phase 1 Historic Property;   ADD accepted Vista's offer contingent upon the Development Business Plan;   and, then, the Development Business Plan was approved.   The only step that had not taken place was the actual closing.

Applying Louisiana law and considering similar jurisprudence, Vista clearly held a constitutionally protected property right.   Accordingly, ADD's Motion to Dismiss must be denied.

## 2.   **Third Party Defendants' Request for Dismissal of the Third Party Demand Must Be Rejected.**

### a.   **Vista Asserted a Deprivation of a Constitutionally Protected Interest; Accordingly the Motion to Dismiss the Third Party Demand Must be Denied**

As discussed *infra* at pages 10 to 14, Vista asserted a deprivation of a constitutionally protected property interest.   Accordingly, Third Party Defendant's motion to dismiss Count I (Deprivation of Substantive Due Process Rights Under the United States and Louisiana Constitution) and Count II (Individual Liability) must be denied.

**b.** **A Dismissal of the Third Party Demand Against the Third Party Defendants in their Official Capacity**

Vista concedes the duplicative nature of its §1983 claims against ADD and the Third Party Defendants in their official capacity. Vista's §1983 claims are against ADD, the real party in interest. Accordingly, Vista agrees to dismiss its §1983 claims against the Third Party Defendants, in their official capacity.

**c.** **The Third Party Defendants Were Personally Involved in the Deprivation of Vista's Constitutional Rights; Accordingly, the Motion to Dismiss Must be Denied**

Vista asserted §1983 claims against the Third Party Defendants, in their individual capacities, because the Third Party Defendants undertook actions which deprived Vista of its vested property rights. ADD struck a deal with Vista at the very tail end of State Senator Jeff Arnold's term. State Senator Jeff Arnold desired to lock in the development for Federal City before he lost his Chainman position with the ADD. ADD executed the First Supplemental Development Agreement and the Purchase Agreement in January 2016.

Troy Carter assumed the role of ADD Chairman immediately thereafter; and, that is when the effort to push-out Vista began. Troy Carter, and the Third Party Defendants, wanted the development to be built by a Troy Carter approved developer, not Vista. The evidence shows that the systematic effort to toss Vista out began as soon as Troy Carter took the helm of ADD.

 Third Party Defendants question the lack of allegations regarding the personal involvement by each of the Third Party Defendants in the Complaint. ADD asserts that Vista must allege specific conduct giving rise to a constitutional violation against each of the Third Party Defendants.

Contrary to the contention made by Third Party Defendants, there is significant personal involvement of the Third Party Defendants. While Vista did not assign any specific actions to the

Third Party Defendants, Vista will amend its Third Party Demand to assign specific actions to each of the Third Party Defendants.   Vista will allege facts to support a claim that the Third Party Defendants had personal and direct involvement in the cancellation of the development agreements, and termination of its role as the sole and exclusive developer. Accordingly, ADD's dismissal request must be rejected.

### 3. The Doctrine of Qualified Immunity Does Not Bar Recovery Under Count II (Individual Liability)

Third Party Defendants assert that they are entitled to qualified immunity, based on their version of the facts, while ignoring the true nature of the dispute reflected in Vista's Counterclaim and Third Party Demand.  Third Party Defendants continue on their argument that this is only a breach of contract case, in an effort to distract this Court from their own actions in making false representations and warranties in the development agreements, hiding environmental reports and issues from Vista, breaching the confidentiality provisions in the development agreements, and untimely, tossing Vista off the project after years of efforts and the expenditure of millions of dollars.   Vista's Business Development Plan was deemed approved, long before ADD sought to question it, and before ADD sought to terminate the development agreements.   (R. Doc. 4, ¶24 of Counterclaim).  Vista was designated as the sole and exclusive developer for the Project for a ten year period.   Despite these two critical facts, which vested Vista with protected property rights in the Project, the Third Party Defendants seeks to yank the Project away from Vista.  Such actions defeat any claims to qualified immunity.

In the Third Party Defendants' motion to dismiss, the Third Party Defendants fail to address any of Vista's demands in its Counterclaim and Third Party Demand (indeed, those claims that the Third Party Defendants desire to have dismissed.)   Instead, in pursing their

Motion to Dismiss, the Third Party Defendants repeatedly cite statements and arguments from ADD's complaint.  Those allegations should not be considered at this juncture.  Clearly, Vista and ADD see this dispute differently.  Vista asserts that it had a constitutionally protected right in the development of the Federal City project; and that, the Third Party Defendants have deprived Vista of its right.

Third Party Defendants' request for dismissal of Vista's individual liability claims under the qualified immunity defense must fail.  Qualified immunity protects an official acting under color of state law in his or her individual capacity "from liability of civil damages **insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known**." *Thomas v. Gulotta*, 2017 WL 379449 (M.D. La. 2017), citing *Batiste v. Theriot*, 458 Fed.Appx. 351, 354 (5th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))(unpublished).    Meaning, if the Third Party Defendants' conduct violated Vista's constitutional rights of which a reasonably person would have known, qualified immunity does not apply.  That is precisely what occurred here.

As discussed *supra,* The Third Party Defendants' actions violated Vista's constitutional rights.  Vista transmitted its Development Business Plan to ADD, outlining its immediate desire to close on and begin developing the Phase 1A Historic portion of the Property. (R. Doc. 4, ¶15, 16 of Counterclaim).  The submission of the Development Business Plan by Vista to ADD on June 30, 2016, specifically stated that the submission was made "in satisfaction of Vista's obligations and conditions to closing under the Purchase Agreement."   (R. Doc. 4, ¶21 of Counterclaim).  ADD did not provide any response whatsoever to Vista's Development Business Plan until September 1, 2016.  (R. Doc. 4, ¶22 of Counterclaim).  **At the time of ADD's September 1, 2016 response, Vista's Development Business Plan had already been deemed**

**approved on August 1, 2016**.  Vista had every right to move forward, in accordance with the Purchase Agreement.   Third Party Defendants lost any right to toss Vista off the Federal City project because Vista's Development Business Plan had been approved, and the sale of the real property was all that was outstanding.  Vista therefore had a vested property right in purchasing and  developing the Property.

Vista's property rights in the Project were clearly established at the time of the Third Party Defendants' wrongdoing.  To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.  *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015).   Third Party Defendants are all members of the ADD or the Executive Director thereof.  They should have all been aware of the executed Purchase Agreement, and the June 30, 2016, submission of the Vista Development Business Plan, especially since it is these same individuals who insisted that Vista make the submission by June 30, 2016.  They should have all been aware of the time deadline for objecting or raising questions to Vista's Development Business Plan.  Yet, they waited until September 1, 2016, to provide any comments thereto, i.e., more than 30 days too late.    Any reasonable official, who undertook its duty as a board member and executive director, should have understood that Vista's Development Business Plan had already been approved, and that they lost any right to complain of same.

Third Party Defendants are sophisticated individuals, who were aware of the development agreements and the June 30, 2016 submission.  Third Party Defendants sat on their hands when Vista submitted its Development Business Plan, even though it was the ADD who insisted the Development Business Plan be submitted on June 30, 2016.  Third Party Defendants were aware of the terms of the development agreement; and, we advised repeatedly by Vista's

counsel at both ADD board meetings and via correspondence.   Yet, Third Party Defendants authorized suit against Vista to deprive Vista of its protected rights.

Even clearer still, is Vista's designation as the sole and exclusive developer for the Project.  This designation was clearly established, and each of the Third Party Defendants knew this.   Vista was the only developer working on the Project for years, and the only entity expending millions of dollars to develop Federal City.  Third Party Defendants cannot claim they were not aware of this designation, or that this designation was "clearly established".

Third Party Defendants completely ignore the fact that Vista's Development Business Plan had been approved, and Vista had fulfilled the conditions to purchase the Phase 1A Historic Property.   Third Party Defendants also completely ignore that ADD designated Vista as the "sole and exclusive" developer for the Project. (R. Doc. 4, ¶60, 62 of the Counterclaim). These facts, which must be accepted as true, overcome the Third Party Defendants' defense of qualified immunity.

ADD further ignores Vista's designation as the "sole and exclusive development agent" on the Project for a ten year period.  (R. Doc. 4, ¶60, 62 of the Counterclaim).   Without this designation and guarantee, Vista would not have expended the time and effort to develop the Project. (R. Doc. 4, ¶61 of the Counterclaim).  Still, ADD ignores this ten year commitment to Vista, and is soliciting and/or searching for a new master developer to replace Vista.  (R. Doc. 4, ¶64 of the Counterclaim).  Again, these facts, which must be accepted as true, overcome the Third Party Defendants' defense of qualified immunity.

When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion, the court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th

Cir. 2012)(quoting *Wicks v. Miss. St. Emp. Servs.*, 41 F.3d 991, 994-95 (5th Cir. 1995)). Therefore, "[a] plaintiff seeking to overcome [the defense of] qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* Applying this guidance, and considering the arguments made *supra,* Vista has plead specific facts that allow the Court to find the Third Party Defendant liable for the harm. Thus, the motion to dismiss must be denied.

## V.    Conclusion

Considering the foregoing, and the Fifth Circuit's guidance that, "Although Rule 12(b)(6) is a powerful tool to use in expediting the judicial process and excising court calendars of cases in which there are no judicially cognizable claims, it is a disfavored motion and is rarely granted,"  this Court should deny ADD and Third Party Defendants' Motion to Dismiss. *Clark v. Amoco Production Co*., 794 F.2d 967, 970 (5th Cir.1986)

Respectfully Submitted:

**KINGSMILL RIESS, L.L.C.**

By:    */s/ Michael R. C. Riess*
Michael R. C. Riess (#2073)
Christy R. Bergeron (#22944)
Michael D. Lane (#30364)
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170
Telephone:  (504) 581-3300
Facsimile:  (504) 581-3310
E-mail:  mriess@kingsmillriess.com
E-mail:  cbergeron@kingsmillriess.com
E-mail:  mlane@kingsmillriess.com

*Attorneys for Defendants,*
*Vista Louisiana, LLC,  Vista Trust and*
*DeVere Construction Company, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.  I further certify that I e-mailed and/or mailed the foregoing document and the notice of electronic filing by U.S. first-class mail to the non-CM/ECF participants appearing in this case, if any, on this 7th day of March, 2017.

<u>/s/ Michael R. C. Riess</u>
Michael R. C. Riess